ROBERT LEE McCONNELL, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 49722

July 23, 2009                                    212 P.3d 307

[Rehearing denied October 6, 2009]

*Scott W. Edwards*, Reno; *Law Office of Thomas L. Qualls, Ltd.*, and *Thomas L. Qualls*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Terrence P. McCarthy*, Deputy District Attorney, Washoe County, for Respondent.

Before HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.

## OPINION

*Per Curiam:*

The primary issue in this appeal is whether the constitutionality of Nevada's lethal injection protocol may be challenged in a post-conviction petition for a writ of habeas corpus. We hold that the claim is not cognizable in a post-conviction petition for a writ of habeas corpus under NRS Chapter 34 because it involves a challenge to the manner in which the death sentence will be carried out rather than the validity of the judgment of conviction or sentence.

## FACTS AND PROCEDURAL HISTORY

Appellant Robert Lee McConnell pleaded guilty to first-degree murder with the use of a deadly weapon, sexual assault, and first-degree kidnapping. In doing so, he admitted that he shot and killed his ex-girlfriend's fiancé, Brian Pierce, and threatened his ex-girlfriend, April Robinson, with a knife, handcuffed her, sexually assaulted her, and kidnapped her, forcing her to drive to California. In a subsequent penalty hearing, the jury found three aggravators—the murder was committed during the course of a burglary and a robbery and involved mutilation—and determined that the aggravators were not outweighed by any mitigating circumstances. The jury returned a death sentence for the first-degree murder charge. On direct appeal, this court held that an aggravator cannot be based on the same felony used to establish felony murder but concluded that McConnell was not entitled to relief because he clearly pleaded guilty to willful, deliberate, and premeditated murder rather than felony murder. *McConnell v. State*, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004), *rehearing denied*, 121 Nev. 25, 107 P.3d 1287 (2005).

McConnell then filed a timely post-conviction petition for a writ of habeas corpus in the district court alleging several claims for relief. The district court dismissed the petition without conducting an evidentiary hearing. McConnell challenges the district court's decision to deny his petition without conducting an evidentiary hearing on his claims.

## DISCUSSION

This court has held that a post-conviction habeas petitioner "is entitled to a post-conviction evidentiary hearing when he asserts claims supported by specific factual allegations not belied by the record that, if true, would entitle him to relief." *Mann v. State*, 118 Nev. 351, 353, 46 P.3d 1228, 1229 (2002); *see Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984). For the reasons below, we conclude that the district court did not err by dismissing McConnell's post-conviction petition without conducting an evidentiary hearing.

### Claim that Nevada's lethal injection protocol is unconstitutional

Relying on the United States Supreme Court's recent decision in *Baze v. Rees*, McConnell argues that Nevada's lethal injection protocol violates the Eighth Amendment to the United States Constitution because it does not sufficiently safeguard against a " 'substantial risk of serious harm.' " 553 U.S. 35, 50 (2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). In this, McConnell draws distinctions between the Kentucky protocol upheld in *Baze* and the protocol used in Nevada. The district court, however, rejected the

claim without an evidentiary hearing after concluding that a post-conviction petition for a writ of habeas corpus is not the proper forum to raise a challenge to Nevada's lethal injection protocol because "by law this type of petition is used solely to attack a judgment or sentence."[1]

Whether a claim challenging the constitutionality of Nevada's lethal injection protocol is cognizable in a post-conviction habeas petition is an issue of first impression for this court. Because a post-conviction petition for a writ of habeas corpus filed pursuant to NRS Chapter 34 is a creature of statute, *see Hill v. Warden*, 96 Nev. 38, 40, 604 P.2d 807, 808 (1980), our resolution of the issue involves statutory interpretation. When interpreting a statute, this court's goal is to determine the Legislature's intent in enacting the statute. *Moore v. State*, 117 Nev. 659, 661, 27 P.3d 447, 449 (2001). Because "we presume that the statute's language reflects the Legislature's intent," we must focus on the statute's plain language. *Id.*

As is evident from Nevada's statutory scheme, a post-conviction petition for a writ of habeas corpus is limited in scope. Under NRS 34.720, a post-conviction petition for a writ of habeas corpus is available to address two types of claims: (1) "[r]equests [for] relief from a judgment of conviction or sentence in a criminal case" and (2) "[c]hallenges [to] the computation of time that [the petitioner] has served pursuant to a judgment of conviction." As a challenge to the lethal injection protocol does not implicate the computation of time served, only the first category is at issue. If a claim falls within that category, meaning that it seeks relief from a conviction or sentence, then a post-conviction petition for a writ of habeas corpus is the exclusive remedy.[2] NRS 34.724(2)(b) (providing that a

---

[1]The district court further denied this claim as barred by the law-of-the-case doctrine, stating that on direct appeal this court found the death penalty constitutional as applied to McConnell. However, on direct appeal we rejected an argument that Nevada's use of lethal injection is unconstitutional due to the absence of detailed codified guidelines setting forth a protocol for lethal injection. *McConnell*, 120 Nev. at 1054-57, 102 P.3d at 615-16. McConnell did not challenge, and this court did not address, the constitutionality of the specific protocol used in Nevada. As a result, the district court was incorrect in its conclusion that the claim was barred by the law-of-the-case doctrine.

[2]There are two exceptions to this rule of exclusivity: a post-conviction petition for a writ of habeas corpus "[i]s not a substitute for and does not affect [1] any remedies which are incident to the proceedings in the trial court or [2] the remedy of direct review of the sentence or conviction." NRS 34.724(2)(a). Under the first exception, this court has recognized four remedies that are incident to the proceedings in the trial court: (1) a motion to correct an illegal sentence, (2) a motion to modify a sentence, (3) a post-conviction motion to withdraw a guilty plea, and (4) a motion for a new trial based on newly discovered evidence. *Hart v. State*, 116 Nev. 558, 562-63 & n.4, 1 P.3d 969, 971-72 & n.4 (2000); *Edwards v. State*, 112 Nev. 704, 707, 918 P.2d 321, 323-24 (1996).

post-conviction petition for a writ of habeas corpus "[c]omprehends and takes the place of all other common-law, statutory or other remedies which have been available for challenging the validity of the conviction or sentence, and must be used exclusively in place of them").

This court has addressed the scope of post-conviction habeas relief in other contexts that provide some guidance. For example, in *Bowen v. Warden,* this court explained that it has "repeatedly held that a petition for writ of habeas corpus may challenge the validity of current confinement, but not the conditions thereof." 100 Nev. 489, 490, 686 P.2d 250, 250 (1984). Accordingly, we have previously determined that challenges to the conditions of confinement, such as placement in punitive segregation, are not cognizable in a post-conviction habeas petition. *Id.* Consistent with NRS 34.720, the import of *Bowen* is that a claim that is cognizable in a post-conviction habeas petition must challenge the *validity* of the conviction or sentence. The claim at issue in this case (the constitutionality of the lethal injection protocol) clearly does not involve a challenge to the validity of the conviction. Therefore, we focus on whether the claim challenges the validity of the sentence.

The United States Supreme Court has considered a similar question in holding that a challenge to a lethal injection protocol that is not statutorily mandated may be filed in a federal action under 42 U.S.C. § 1983. In *Hill v. McDonough,* 547 U.S. 573, 579 (2006), the Court reasoned that a protocol challenge is more akin to a challenge to the conditions of confinement, which may be brought under § 1983, than a challenge to the lawfulness of confinement or its duration, which must be brought in a habeas petition under 28 U.S.C. § 2254. The Court explained that the petitioner's challenge to the lethal injection protocol would "leave the State free to use an alternative lethal injection procedure" because state law did not require use of the challenged procedure. *Id.* at 580-81. As a result, the Court concluded that the claim could proceed under § 1983 because "granting relief would not imply the unlawfulness of the lethal injection sentence." *Id.* at 580. The *Hill* Court, however, did not directly address whether the same challenge would also be cognizable in a federal habeas petition.

In answering that question for purposes of a state habeas petition under NRS Chapter 34, we conclude that a challenge to the lethal injection protocol in Nevada does not implicate the validity of a death sentence because it does not challenge the death sentence itself but seeks to invalidate a particular procedure for carrying out the sentence. In Nevada, the method of execution—"injection of a lethal drug"—is mandated by statute. NRS 176.355(1). But the

manner in which the lethal injection is carried out—the lethal injection protocol—is left by statute to the Director of the Department of Corrections. NRS 176.355(2)(b) (providing that the Director shall "[s]elect the drug or combination of drugs to be used for the execution after consulting with the State Health Officer"). Because the lethal injection protocol is not mandated by statute, granting relief on a claim that a specific protocol is unconstitutional would not implicate the legal validity of the death sentence itself. Rather, while granting relief on such a claim would preclude the Director from using the particular protocol found to be unconstitutional, the Director would be free to use some other protocol to carry out the death sentence.[3] Because McConnell's challenge to the lethal injection protocol would not preclude his execution under current law using another protocol, we conclude that the challenge to the lethal injection protocol does not implicate the validity of the death sentence and therefore falls outside the scope of a post-conviction petition for a writ of habeas corpus.[4] *Accord Ex parte Alba,* 256 S.W.3d 682, 685-86 (Tex. Crim. App. 2008) (reasoning that because the specific mixture used for lethal injection is not mandated by statute in Texas and any challenge to the current protocol would not eliminate the petitioner's death sentence, challenge to lethal injection protocol was not cognizable in state habeas petition).[5] Accordingly, the district court did not err in rejecting this claim without conducting an evidentiary hearing.

### Claims that challenged the validity of the guilty plea

McConnell argues that the district court erred by dismissing his claims that his guilty plea was not entered knowingly and voluntarily. In particular, McConnell claims that his plea was invalid because he was not advised that he was waiving several constitutional rights, that he would be subject to lifetime supervision as a result of the sexual assault conviction, that he was ineligible for probation, and that he would be assessed fees and restitution and because the dis-

---

[3]As the Supreme Court's decision in *Baze* demonstrates, there is at least one protocol available that clearly meets constitutional requirements.

[4]We are further convinced of this conclusion by two practical considerations. First, a challenge to the lethal injection protocol necessarily seeks injunctive relief against use of the specific protocol, and it is not entirely clear that injunctive relief is available in a post-conviction habeas proceeding under NRS Chapter 34. Second, if the claim is cognizable in a post-conviction petition under NRS Chapter 34, then that is the only remedy available, NRS 34.724(2)(b), and the claim could be procedurally barred for some prisoners under NRS 34.726, NRS 34.800, or NRS 34.810.

[5]Our decision today does not leave McConnell without a remedy. For example, as the Supreme Court's decision in *Hill* makes clear, a challenge to the lethal injection protocol may be brought in an action under 42 U.S.C. § 1983.

trict court failed to inquire whether he was under the influence of drugs during the plea canvass.[6]

A guilty plea is presumptively valid, and McConnell had the burden of establishing that the plea was not entered knowingly and intelligently. *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 675, 877 P.2d 519, 521 (1994). In determining the validity of a guilty plea, the district court must look to the totality of the circumstances. *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Bryant*, 102 Nev. at 272, 721 P.2d at 368. Thus, "the failure to utter talismanic phrases will not invalidate a plea where a totality of the circumstances demonstrates that the plea was freely, knowingly and voluntarily made," *Freese*, 116 Nev. at 1104, 13 P.3d at 447, and that the defendant understood the nature of the offense and the consequences of the plea. *See Kidder v. State*, 113 Nev. 341, 344, 934 P.2d 254, 256 (1997), *overruled on other grounds by Freese*, 116 Nev. at 1106 n.7, 13 P.3d at 448 n.7. This court will not reverse a district court's determination concerning the validity of a plea absent a clear abuse of discretion. *Hubbard*, 110 Nev. at 675, 877 P.2d at 521.

The record in this case demonstrates that McConnell's guilty plea was entered knowingly and voluntarily and, therefore, the district court did not abuse its discretion in denying McConnell's challenge to his guilty plea. First, events at the *Faretta* canvass[7] that preceded the plea canvass demonstrate McConnell's intelligence and awareness of the proceedings, his understanding of his constitutional rights, and that he was adamant about pleading guilty. Second,

---

[6]McConnell also claims that his plea was not entered knowingly and voluntarily because the district court did not advise him during the plea canvass that it had discretionary authority to impose concurrent or consecutive sentences and that a presentence report including his criminal history and hearsay evidence would be prepared before he was sentenced on the kidnapping and sexual assault counts. We conclude that the district court did not abuse its discretion in rejecting these claims as McConnell failed to adequately explain how these omissions rendered his guilty plea involuntary, particularly considering that he faced the death penalty as a result of the plea.

McConnell further claims that the plea was invalid under NRS 174.035(7) because it was not memorialized in a written plea agreement. We conclude that this claim lacks merit and therefore the district court did not abuse its discretion in rejecting it. NRS 174.035(7) does not apply here because McConnell's guilty plea was not entered "pursuant to a plea bargain." Instead, McConnell pleaded guilty to all of the charges without the benefit of plea negotiations with the State, informing the district court that he was pleading guilty, over his prior counsel's objections, because of the overwhelming evidence the State possessed and because he wanted to accept responsibility.

[7]The district court canvassed McConnell pursuant to *Faretta v. California*, 422 U.S. 806 (1975), before granting his request to represent himself.

the district court sufficiently advised McConnell of his constitutional rights during the plea canvass, addressing the right to a jury trial on the issue of guilt, the right to confrontation, the right to cross-examine witnesses, the right to subpoena witnesses, and the right against self-incrimination and also addressing the deadlines for McConnell to pursue an appeal. Third, although McConnell was not advised that lifetime supervision would be a direct consequence of his guilty plea to sexual assault, *see Palmer v. State*, 118 Nev. 823, 831, 59 P.3d 1192, 1197 (2002), we conclude that the omission did not render the plea invalid given that McConnell was advised that he faced a life sentence for the sexual assault and he therefore was aware that he faced a maximum sentence that was greater than or equal to lifetime supervision plus the sentence imposed, *see id.* at 829 n.17, 59 P.3d at 1195 n.17; *Avery v. State*, 122 Nev. 278, 284, 129 P.3d 664, 668 (2006). Fourth, although the district court did not inform McConnell during the plea canvass that he was ineligible for probation,[8] it is apparent from the totality of the circumstances that McConnell was aware that probation was not a sentencing option. *See Avery*, 122 Nev. at 284-85, 129 P.3d at 668 (concluding that guilty plea was voluntary although district court did not specifically inform defendant of minimum term where district court advised defendant that maximum punishment was life in prison with possibility of parole after 20 years). In particular, McConnell was aware that he faced a death sentence. Fifth, although the district court did not inform McConnell during the plea canvass that he would be assessed fees and restitution as a consequence of his guilty plea,[9] we conclude that this omission did not render the plea unknowing or involuntary given the totality of the circumstances demonstrating that McConnell understood the consequences of his guilty plea. And sixth, although the district court did not ask McConnell during the plea canvass whether he was under the influence of drugs, the totality of the circumstances demonstrate that McConnell was not under the influence of drugs at the time. In particular, the plea canvass followed a thorough *Faretta* canvass during which McConnell informed the district court that he was not taking any medication and was not under the influence of drugs or alcohol. Given the totality of the circum-

---

[8]This court's prior decisions require that when an offense does not allow for probation, " 'the district judge has a duty to insure that the record discloses that the defendant is aware of that fact.' " *Riker v. State*, 111 Nev. 1316, 1322-23, 905 P.2d 706, 710 (1995) (quoting *Meyer v. State*, 95 Nev. 885, 887, 603 P.2d 1066, 1067 (1979), *overruled on other grounds by Little v. Warden*, 117 Nev. 845, 34 P.3d 540 (2001)).

[9]This court's prior decisions indicate that restitution is a direct consequence of a guilty plea and therefore a defendant must be informed of the possibility of restitution to ensure that the defendant understands the consequences of the plea. *See Lee v. State*, 115 Nev. 207, 209-10, 985 P.2d 164, 166 (1999); *Cruzado v. State*, 110 Nev. 745, 747, 879 P.2d 1195, 1196 (1994), *overruled on other grounds by Lee*, 115 Nev. 207, 985 P.2d 164.

stances demonstrating a knowing and voluntary plea, the district court did not abuse its discretion in rejecting McConnell's challenges to the validity of his guilty plea.[10]

## Claims of ineffective assistance of counsel

McConnell contends that the district court erred in dismissing his claims that trial and appellate counsel provided ineffective assistance of counsel. A claim that counsel provided constitutionally inadequate representation is subject to the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of trial or appellate counsel, a defendant must demonstrate (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *Id.* at 687. A court need not consider both prongs of the *Strickland* test if a defendant makes an insufficient showing on either prong. *Id.* at 697. "A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review." *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001).

### Ineffective assistance of trial counsel

McConnell contends that his standby defense counsel provided ineffective assistance by permitting him to plead "straight-up" while a discovery request was pending, demonstrating that standby counsel had not properly investigated and was not prepared. To establish prejudice resulting from trial counsel's inaction or omission, a defendant who pleaded guilty must demonstrate a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). "The defendant carries the affirmative burden of establishing prejudice." *Riley v. State*, 110 Nev. 638, 646, 878 P.2d 272, 278 (1994). We conclude that McConnell's claim has no merit for three reasons.

First, McConnell waived his right to counsel and chose to represent himself. Therefore, he did not have a constitutional right to the effective assistance of standby counsel. *See Harris v. State*, 113 Nev. 799, 804, 942 P.2d 151, 155 (1997) (holding that defendant does not have right to advisory counsel); *see also Faretta v. California*,

---

[10]To the extent that McConnell claims that appellate counsel was ineffective for failing to challenge the validity of his guilty plea on appeal, this claim lacks merit because he cannot do so. *See Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 367-68 (1986).

422 U.S. 806, 835 (1975) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.").

Second, McConnell stated during the plea canvass that he was pleading guilty against the advice of counsel. Although counsel certainly owes a duty to advise his client whether to plead guilty, counsel does not have the authority to override a defendant's decision to plead guilty. That decision is reserved to the client. RPC 1.2 (providing that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered").

Third, McConnell did not specify in his petition what discovery was outstanding and how that discovery would have convinced him not to plead guilty and proceed to trial. And during McConnell's *Faretta* canvass, he complimented his attorneys' performance, stating that "they're great attorneys, all of them. And I have to say I am impressed . . . these people actually care. And they're against the death penalty, and they believe in something." Under the circumstances, McConnell cannot meet his affirmative burden of establishing prejudice—that but for standby counsel's alleged error in allowing him to plead guilty while a discovery request was pending, he would not have pleaded guilty and would have insisted on going to trial.

### Ineffective assistance of appellate counsel

McConnell argues that the district court erred in dismissing his claim that appellate counsel was ineffective for failing to raise several issues. To state a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that the omitted issue would have had a reasonable probability of success on appeal. *Kirksey*, 112 Nev. at 998, 923 P.2d at 1113-14. Appellate counsel is not required to raise every nonfrivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, this court has held that appellate counsel will be most effective when every conceivable issue is not raised on appeal. *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989).

#### Jury instruction on weighing aggravating and mitigating factors

McConnell argues that the district court erred in rejecting his ineffective-assistance claim based on appellate counsel's failure to

argue that the district court should have instructed the sentencing jury that the aggravating factors had to outweigh the mitigating factors beyond a reasonable doubt before it could impose death. We conclude that this ineffective-assistance claim lacks merit because the underlying legal argument would not have had a reasonable probability of success on appeal.

Nevada statutes do not impose the burden suggested by McConnell's claim. Two specific provisions are relevant. First, NRS 200.030(4)(a), which outlines the range of punishment for a first-degree murder conviction, provides that death can be imposed "only if . . . any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances." Second, NRS 175.554(3), which addresses jury instructions, determinations, findings, and the verdict, states that "[t]he jury may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found." Nothing in the plain language of these provisions requires a jury to find, or the State to prove, beyond a reasonable doubt that no mitigating circumstances outweighed the aggravating circumstances in order to impose the death penalty.

Similarly, this court has imposed no such requirement. In *DePasquale v. State*, we rejected an invitation to overturn previously established caselaw and require the State to prove beyond a reasonable doubt that aggravating circumstances outweigh mitigating circumstances. 106 Nev. 843, 852, 803 P.2d 218, 223 (1990); *accord Harris v. Pulley*, 692 F.2d 1189, 1195 (9th Cir. 1982) (noting that United States Supreme Court has never stated that beyond-a-reasonable-doubt standard is required when determining whether death penalty is imposed), *rev'd on other grounds*, 465 U.S. 37 (1984); *Gerlaugh v. Lewis*, 898 F. Supp. 1388, 1421 (D. Ariz. 1995) (holding that jury " 'need not be instructed how to weigh any particular fact in the capital sentencing decision' " (quoting *Tuilaepa v. California*, 512 U.S. 967, 979 (1994)). As the United States Supreme Court has stated, the jury's decision whether to impose a sentence of death is a moral decision that is not susceptible to proof. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985) (quoting *Zant v. Stephens*, 462 U.S. 862, 901 (1983)).

Because McConnell failed to demonstrate that this jury-instruction issue would have had a reasonable probability of success on appeal, we conclude that the district court did not err in rejecting McConnell's ineffective-assistance claim without conducting an evidentiary hearing.

### Mandatory review of death sentences

McConnell contends that the district court erred in rejecting his ineffective-assistance claim based on appellate counsel's failure to argue that this court has not articulated any standards for its mandatory review of death sentences pursuant to NRS 177.055(2).[11] Citing *Dennis v. State*, 116 Nev. 1075, 13 P.3d 434 (2000), McConnell claims that the only guidance this court uses is the following question: ''[A]re the crime and defendant before us on appeal of the class or kind that warrants the imposition of death?'' *Id.* at 1085, 13 P.3d at 440. McConnell argues that without standards, he was unable to litigate on direct appeal the issue of whether his sentence was excessive and that that deprivation prejudiced him because he was unable to show that his case was no more egregious than cases in which the death penalty was not imposed.

In *Dennis*, this court explained that, although we no longer conduct proportionality review of death sentences,[12] our consideration of the death sentences of ''similarly situated defendants may serve as a frame of reference for determining the crucial issue in the excessiveness analysis'' under NRS 177.055(2). 116 Nev. at 1085, 13 P.3d at 440. When considering whether the death penalty is excessive, this court looks to whether various other objective factors are present, such as whether alcohol or drugs influenced the crime, the treatment of codefendants, and the defendant's mental state, prior history of violence, and age. *Rhyne v. State*, 118 Nev. 1, 16, 38 P.3d 163, 173 (2002). In other words, this court considers ''the totality of the circumstances surrounding the defendant and the crime in making a determination of excessiveness.'' *Id.*

McConnell fails to specify how he would have benefited by more specific standards applied by this court in determining whether his sentence was excessive or that this court improperly concluded that his death sentence was not excessive. In particular, we observed

---

[11]NRS 177.055(2) provides, in pertinent part, that this court must review every death sentence and consider:

> (c) Whether the evidence supports the finding of an aggravating circumstance or circumstances;
> (d) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and
> (e) Whether the sentence of death is excessive, considering both the crime and the defendant.

[12]A prior version of NRS 177.055(2) required this court to conduct a proportionality review of death sentences. 1985 Nev. Stat., ch. 527, § 1, at 1597-98. The Legislature repealed that requirement in 1985. *See, e.g.*, *Thomas v. State*, 114 Nev. 1127, 1148, 967 P.2d 1111, 1125 (1998); *Guy v. State*, 108 Nev. 770, 784, 839 P.2d 578, 587 (1992).

in McConnell's direct appeal that he murdered Pierce "with a shocking degree of deliberation and premeditation and without any comprehensible provocation" and that "[h]e presented no compelling mitigating evidence." *McConnell v. State*, 120 Nev. 1043, 1073, 102 P.3d 606, 627 (2004). We thoroughly considered whether McConnell's character and the crime warranted the imposition of death. Therefore, we conclude that McConnell failed to demonstrate that this claim had a reasonable probability of success on appeal and, as a result, the district court did not err in rejecting this ineffective-assistance claim without conducting an evidentiary hearing.

### Elected judges

McConnell contends that the district court erred in rejecting his ineffective-assistance claim based on appellate counsel's failure to argue that it was prejudicial to have elected judges and justices preside over his trial and appellate review because elected judges are beholden to the electorate and therefore cannot be impartial. We conclude that this claim fails for two reasons. First, McConnell failed to substantiate this claim with any specific factual allegations demonstrating actual judicial bias. Second, we conclude that his argument is unpersuasive and would not have had a reasonable probability of success on appeal. *See Nevius v. Warden*, 113 Nev. 1085, 1086-87, 944 P.2d 858, 859 (1997) (denying disqualification of supreme court justice where justice commented during election campaign that he favored death penalty in appropriate cases and had voted to uphold death penalty 76 times). Because this omitted issue had no reasonable probability of success on appeal, McConnell cannot demonstrate that appellate counsel provided ineffective assistance in this respect. The district court therefore did not err in rejecting this ineffective-assistance claim without conducting an evidentiary hearing.

### Death-qualified jury

McConnell next argues that the district court erred in rejecting his ineffective-assistance claim based on appellate counsel's failure to argue that jury selection was unfairly limited to those jurors who were "death qualified."[13] Even assuming that the jurors identified by McConnell were dismissed because they were unwilling to impose a death sentence, there was no error. This court and the United States

---

[13]We note that McConnell provided only partial transcripts of the voir dire. The burden is on the appellant to provide this court with an adequate record enabling this court to review assignments of error. *Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980); *Lee v. Sheriff*, 85 Nev. 379, 380, 455 P.2d 623, 624 (1969).

Supreme Court have determined that death qualification of a jury is not an unconstitutional practice. *See, e.g.*, *Buchanan v. Kentucky*, 483 U.S. 402, 416, 420 (1987); *Lockhart v. McCree*, 476 U.S. 162, 173 (1986); *Aesoph v. State*, 102 Nev. 316, 317-19, 721 P.2d 379, 380-81 (1986); *McKenna v. State*, 101 Nev. 338, 342-44, 705 P.2d 614, 617-18 (1985). Additionally, since McConnell's jury was chosen only for the penalty hearing, the jury was required to be death qualified to ensure that they could follow the law and perform their duty as jurors. *See Buchanan*, 483 U.S. at 415-16. Because there was no error in death qualifying the jury, McConnell cannot demonstrate that appellate counsel was ineffective for failing to raise the issue. Thus, the district court did not err in rejecting this ineffective-assistance claim without conducting an evidentiary hearing.

### Application of the McConnell rule

McConnell next claims the district court erred in dismissing his ineffective-assistance claim based on appellate counsel's failure to argue that two of the aggravating circumstances were improperly based upon the predicate felony alleged in support of the State's felony-murder theory. This claim is belied by the record in that appellate counsel did raise this issue on direct appeal—it was the focus of this court's decision in the direct appeal. *See McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004). Because the claim is belied by the record, the district court properly rejected it without conducting an evidentiary hearing.

McConnell nonetheless argues that this court should review this claim because it is "warranted." In particular, McConnell argues that this court's holding in his direct appeal was erroneous because he did not make any factual admissions when he entered his guilty plea that would support the conclusion that he pleaded guilty to willful, deliberate, and premeditated murder rather than felony murder, and this court erred by basing its contrary conclusion in part on his testimony during the penalty hearing. Relying on *Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004), McConnell argues that "admissions which come later in time than the entry of the plea are not sufficient to cure a deficiency with the plea itself."[14] But unlike in *Means*, the issue we considered in McConnell's direct appeal did not involve the validity of the guilty plea but rather the theory upon which the first-degree murder con-

---

[14]In *Means*, we held that because Means had signed his plea agreement three months after his plea canvass and the district court failed to inform him during the plea canvass that lifetime supervision was a consequence of his guilty plea, the record did not belie Means's claim that he was unaware that lifetime supervision was a direct consequence of his plea. 120 Nev. at 1017-18, 103 P.3d at 36. We therefore concluded that the district court erred by denying Means's claim that his plea was invalid without conducting an evidentiary hearing.

viction was based. McConnell has not cited any relevant legal authority to undermine our analysis on direct appeal. We therefore are not persuaded to revisit the law of the case on this matter, as established on direct appeal.[15] *See Pellegrini v. State*, 117 Nev. 860, 885, 34 P.3d 519, 535-36 (2001) (indicating that despite law-of-the-case doctrine, appellate court has "limited discretion to revisit the wisdom of its legal conclusions when it determines that further discussion is warranted").

## Direct appeal claims

McConnell contends that the district court erred in dismissing the following claims without conducting an evidentiary hearing: (1) the jury should have been instructed that it had to find that the aggravating factors outweighed the mitigating factors beyond a reasonable doubt before it could return with a sentence of death, (2) this court has not articulated standards for its mandatory excessiveness review, (3) it was prejudicial to have elected judges and justices preside over his penalty hearing and appellate review, (4) the aggravating circumstances were improperly based upon the predicate felony alleged in support of the State's felony-murder theory, (5) the jury selection was unfairly limited to those jurors who were "death qualified," (6) the district court erred in allowing venire members to be dismissed on the basis that they had reservations regarding the death penalty, (7) the death penalty is unconstitutional,[16] and (8) the death sentence is invalid because he may become incompetent to be executed. These claims should have been raised on direct appeal and thus are procedurally barred under NRS 34.810 absent a showing of good cause and prejudice. McConnell did not attempt to demonstrate good cause, and he failed to demonstrate that dismissal of these claims resulted in prejudice. Thus, we conclude that the district court did not err in dismissing these claims.

---

[15]The State in its brief on appeal argues that *McConnell* was wrongly decided and should be overturned. This court considered and rejected the same challenges to *McConnell* in *State v. Harte*, 124 Nev. 969, 194 P.3d 1263 (2008), *cert. denied*, 129 S. Ct. 2431 (2009). We decline to revisit the issue.

[16]McConnell argues that the death penalty is unconstitutional on the grounds that it (1) is a wanton and arbitrary infliction of pain, (2) is unacceptable under current American standards of human decency, (3) deprives persons of the fundamental right to life without a compelling justification, (4) is cruel and unusual, (5) violates international law, (6) presents the risk of executing an innocent person, (7) undermines the underlying goals of the capital sanction by executing a rehabilitated person, and (8) allows district attorneys to select capital defendants and therefore results in arbitrary, inconsistent, and discriminatory selections.

*Cumulative error*

McConnell claims that all the alleged errors raised in this appeal considered cumulatively rendered his conviction and sentence unfair. McConnell uses the cumulative-error standard that this court applies on direct appeal from a judgment of conviction. *See, e.g.*, *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002) ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually."). We are not convinced that that is the correct standard, but assuming that it is, McConnell has not asserted any meritorious claims of error and therefore there is nothing to cumulate.[17] We therefore conclude that the district court did not err in dismissing this claim.

## CONCLUSION

The district court did not err in dismissing McConnell's post-conviction petition without conducting an evidentiary hearing. With respect to the constitutional challenge to Nevada's lethal injection protocol, we agree with the district court that such a challenge is not cognizable in a post-conviction petition for a writ of habeas corpus under NRS Chapter 34 because it does not implicate the validity of the death sentence itself. Accordingly, we affirm the judgment of the district court.

---

[17]We acknowledge that some courts have taken an approach similar to cumulative error in addressing ineffective-assistance claims, holding that multiple deficiencies in counsel's performance may be cumulated for purposes of the prejudice prong of the *Strickland* test when the individual deficiencies otherwise would not meet the prejudice prong. *See, e.g.*, *Harris by and through Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) (stating that " 'prejudice may result from the cumulative impact of multiple deficiencies' " (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978))); *Schofield v. Holsey*, 642 S.E.2d 56, 60 n.1 (Ga. 2007), *cert. denied*, 552 U.S. 1070 (2007); *State v. Thiel*, 665 N.W.2d 305, 323 (Wis. 2003) (stating that it "need not look at the prejudice of each deficient act or omission in isolation, because we conclude that the cumulative effect undermines our confidence in the outcome of the trial"). *But see Lee v. Lockhart*, 754 F.2d 277, 279 (8th Cir. 1985) (reasoning that "[e]ach claim of a constitutional deprivation asserted in a petition for federal habeas corpus must stand on its own, or, as here, fall on its own"); *Byrd v. Armontrout*, 686 F. Supp. 743, 784 (E.D. Mo. 1988) (same). Assuming that multiple claims of constitutionally deficient counsel may be cumulated to demonstrate prejudice, we conclude that McConnell still would not be entitled to relief.