# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2013-NMSC-008**

**Filing Date: March 14, 2013**

**Docket No. 33,280**

**IN THE MATTER OF
GENE N. CHAVEZ, ESQUIRE**

**AN ATTORNEY SUSPENDED FROM
THE PRACTICE OF LAW BEFORE
THE COURTS OF THE STATE OF
NEW MEXICO**

Jane Gagne, Assistant Disciplinary Counsel
Albuquerque, NM

for Disciplinary Board

Ray Twohig
Albuquerque, NM

for Respondent

## OPINION

### MAES, Chief Justice

{1}    This public censure of attorney Gene N. Chavez (Respondent) follows disciplinary proceedings conducted under the Rules Governing Discipline, Rules 17-101 to -316 NMRA, in which the Disciplinary Board found that Respondent violated multiple Rules of Professional Conduct. The disciplinary proceedings arose from Respondent's representation of clients in two unrelated matters, a legal malpractice case and a criminal case. On March 15, 2012, a hearing committee of the Disciplinary Board entered findings of fact and conclusions of law, which the Court has adopted. Respondent's misconduct included multiple acts of dishonesty, the failure to represent his clients with competence and diligence, and the placement of an unreasonable limitation on the scope of his legal representation. On September 19, 2012, we concluded that Respondent's ethical violations warranted suspension, and we ordered that Respondent be suspended from the practice of law, pay the costs of his disciplinary proceedings, and receive this public censure.

### LEGAL MALPRACTICE LAWSUIT

1

## A. Background

**{2}** One of the two charges in this case arose out of Respondent's representation of two plaintiffs in a legal malpractice lawsuit against the plaintiffs' former attorney. The case was the first legal malpractice lawsuit that Respondent had undertaken since Respondent began operating his own private practice in about 2004.

**{3}** In their complaint for legal malpractice, the plaintiffs alleged that their former attorney had breached her duties to them in five separate ways. The plaintiffs needed expert testimony to prove most of the alleged breaches. *See, e.g.*, *Rancho del Villacito Condominiums, Inc. v. Weisfeld*, 121 N.M. 52, 55-56, 908 P.2d 745, 748-49 (1995) (stating that expert testimony is usually needed to prove legal malpractice). On July 8, 2010, Respondent wrote to the defendant, stating that he had "spoken to many personal injury attorneys that would be willing to serve as an expert witness that your actions were below the standard of care." The Disciplinary Board found that Respondent's statement was not credible because Respondent never retained or named any expert witness by the January 11, 2011, court-ordered deadline for disclosing witnesses.

**{4}** On February 14, 2011, the defendant moved for summary judgment on the ground that Respondent had not named an expert witness to testify in support of his clients' malpractice claims. Respondent filed a response in which he failed to set forth any argument as to why an expert witness was not required to prove the defendant's negligence. Instead, Respondent attached his own affidavit to the response, purportedly as a Rule 1-056(F) NMRA affidavit. *See* Rule 1-056(F) ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his position, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). In his affidavit, Respondent represented that the plaintiffs had "been unable to obtain a statement, affidavit or letter from such expert witnesses that would be necessary to rebut the allegations raised" in the motion for summary judgment.

**{5}** Additionally, Respondent asserted in his affidavit that there was a pending attorney disciplinary complaint against the defendant and stated that his clients might need to supplement their witness list, depending on the outcome of the complaint. On March 10, 2011, opposing counsel wrote to Respondent, informing him that there was no pending disciplinary complaint against the defendant and asking Respondent to retract his statement. Respondent ignored the letter and failed to retract the statement or inform the court that the statement was incorrect. In a subsequent telephone conversation, opposing counsel again urged Respondent to withdraw the false statement. Rather than agreeing to correct the false statement, Respondent replied that "it would be easy" to file a disciplinary complaint against the defendant.

**{6}** On April 13, 2011, the district court held a hearing on the motion for summary

judgment. Respondent did not attend the hearing but instead gave this task to his newly hired associate, who attended the hearing by telephone. At the hearing, Respondent's associate neither provided argument regarding why an expert witness would not be necessary in the case nor corrected the false statement that Respondent had submitted to the court regarding a disciplinary complaint. The court granted the defendant's motion for summary judgment.

**{7}** On October 27, 2011, Respondent moved the court to set aside the judgment. *See* Rule 1-060(B)(2) (providing that "the court may relieve a party . . . from a final judgment" if there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1-059 NMRA"). In the motion, Respondent asserted that the defendant, in the course of representing Respondent's clients, had failed to release a hospital lien for $9,501.18. Respondent mailed a copy of the motion to opposing counsel before Respondent filed the motion with the court. Opposing counsel responded with information demonstrating that the lien had, in fact, been released. Several weeks later, Respondent filed the motion in the district court without correcting the misrepresentation regarding the hospital lien, even though Respondent knew the lien had been released.

## B. Discussion

**{8}** Respondent's representation of his clients in the legal malpractice suit exhibits a pattern of knowing misrepresentations to the court. First, Respondent asserted in his Rule 1-056(F) affidavit that he had been unable to obtain a statement, affidavit, or letter from an expert witness, when in fact it appears that Respondent failed to ever consult with any potential expert witnesses. Second, Respondent stated falsely in his affidavit that there was a pending attorney disciplinary complaint against the defendant. At his disciplinary hearing, Respondent testified that he relied on conversations with an employee and his clients in concluding that a disciplinary complaint had been filed. But, assuming the pendency of a disciplinary complaint had been relevant to the motion for summary judgment, which it was not, Respondent would have had a duty to exercise independent judgment and determine whether there was in fact a pending disciplinary complaint. *Cf. In re Estrada*, 2006-NMSC-047, ¶¶ 23, 27, 140 N.M. 492, 143 P.3d 731 (lawyer's reliance on representations of others without exercise of independent judgment violated Rules of Professional Conduct). Moreover, Respondent knew by March 10, 2011, that his statement in the affidavit was false yet failed to correct the false statement. Finally, Respondent filed his motion to set aside the judgment after learning that the motion contained a false statement regarding the hospital lien.

**{9}** By filing court documents that contained false statements of fact, Respondent violated Rule 16-301 NMRA, which prohibits a lawyer from asserting an issue in a proceeding when there is no basis in law and fact for doing so, and Rule 16-303(A) NMRA, which prohibits a lawyer from "mak[ing] a false statement of fact to a tribunal or fail[ing] to correct a false statement previously made to a tribunal."

**{10}** Respondent's assertion regarding the nonexistent disciplinary complaint also violated Rule 16-404(A) NMRA, which provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person[.]" Whether a disciplinary complaint was pending against the defendant was irrelevant to whether Respondent's clients could prove their claims without expert testimony, and Respondent's inclusion of this misinformation served no purpose other than to embarrass or burden the defendant.

**{11}** Additionally, Respondent's failure to name an expert by the court-ordered witness disclosure deadline fell below the standards of competence and diligence required of attorneys. *See* Rule 16-101 NMRA ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); Rule 16-103 NMRA (requiring a lawyer to "act with reasonable diligence and promptness in representing a client"). During his disciplinary hearing, Respondent testified that he believed expert testimony would not be necessary to prove legal malpractice in his clients' case. The hearing committee concluded that Respondent's statement in this regard was not credible, and that in any event, Respondent was wrong to conclude that an expert was unnecessary. Because Respondent lacked experience in the field of legal malpractice, Respondent should have either devoted adequate time and study to the case or associated himself with an experienced, competent legal malpractice attorney. *Cf. In re Hanratty*, 110 N.M. 354, 356, 796 P.2d 247, 249 (1990) (representing clients in bankruptcy matter without being competent in that area of law or associating with competent bankruptcy counsel violated Rule 16-101 and warranted suspension).

## CRIMINAL DEFENSE CASE

### A. Background Facts

**{12}** The second disciplinary charge in this case arose out of Respondent's representation of a criminal defendant who had been accused of sexual misconduct involving his minor niece. The defendant was charged with criminal sexual penetration along with four other charges, and he faced a total possible sentence of almost fifty-two years of incarceration.

**{13}** On September 2, 2010, the defendant's wife retained Respondent to represent the defendant and signed a legal services contract with Respondent. In the contract, Respondent agreed to represent the defendant for the limited purpose of negotiating a plea agreement for a flat fee of $2,500. During the course of the criminal case against his client, Respondent conducted no discovery and did no witness interviews. Respondent's limited interactions with his client included a total of only four or five encounters, including conversations by telephone and in-person meetings at the courthouse.

**{14}** The court held a plea hearing in the defendant's case on March 3, 2011. Respondent did not attend the hearing but sent his newly hired associate to represent the defendant. Although the defendant was expected to enter into a plea agreement at the hearing, the

4

defendant ultimately rejected the State's offer.

**{15}** On March 15, 2011, six weeks before the defendant's trial was scheduled to begin, Respondent moved the court for permission to withdraw from the representation, without first discussing his desire to withdraw with his client. In the motion, Respondent cited a breakdown of the attorney-client relationship as the reason for the withdrawal. But in truth, Respondent sought to withdraw because Respondent had accepted a flat fee of only $2,500 for the sole purpose of negotiating a plea agreement.

**{16}** On March 31, 2011, the court held a hearing on Respondent's motion to withdraw. Respondent did not attend the hearing but again sent his associate to appear on his behalf. The court denied the motion. After the court denied the motion to withdraw, Respondent informed the prosecutor that he would "do nothing to prepare for trial." At his disciplinary hearing, Respondent claimed that he wrote this to the prosecutor to "set up a claim for ineffective assistance of counsel."

**B.    Discussion**

**{17}** Respondent violated multiple Rules of Professional Conduct during the course of representing the defendant. At the outset of the representation, Respondent violated Rule 16-102(C) by placing an unreasonable limitation on the scope of representation. The Rules of Professional Conduct permit a lawyer to "limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent." Rule 16-102(C). But a lawyer cannot reasonably agree to represent a criminal defendant for the sole purpose of negotiating a plea because a lawyer must always "abide by a client's decision . . . as to a plea to be entered." Rule 16-102(A) NMRA; *see State v. Jones*, 923 P.2d 560, 566 (Mont. 1996) (allowing a lawyer to withdraw from representing a client because the client rejected a plea agreement would run "directly afoul of Rule 1.2(a)" of the Model Rules of Professional Conduct); *see also McConnell v. State*, 212 P.3d 307, 314 (Nev. 2009) ("Although counsel certainly owes a duty to advise his client whether to plead guilty, counsel does not have the authority to override a defendant's decision to plead guilty. That decision is reserved to the client."). Thus, when Respondent entered into a contract for limited legal services for a flat fee with the defendant's spouse, Respondent should have been cognizant that neither the spouse nor Respondent could decide for the defendant whether to accept the terms of any plea agreement offered by the prosecution. A lawyer should not establish a fee arrangement that may put the client at a disadvantage if circumstances change during the course of the representation. *See* Rules 16-101 & -102(C).

**{18}** Additionally, after accepting the defendant's case, Respondent breached his duty to provide the defendant with competent, diligent representation. *See* Rules 16-101 & -103. Despite the expectation that the defendant would enter into a plea agreement, Respondent had the duty to prepare for trial, including conducting reasonable discovery and investigation into the case. *See id.* And once the defendant rejected the plea offer, Respondent should have diligently continued his trial preparation rather than attempting to abandon his client.

*See id.*

**{19}** Finally, Respondent violated Rule 16-303(A) when he lied to the court about the reason he sought to withdraw from the representation. Rather than admitting that he had accepted a fee of only $2,500 for the case, Respondent asserted that there had been a breakdown of the attorney-client relationship. As in the malpractice lawsuit, Respondent's dishonesty in the criminal case demonstrates his willingness to compromise the truth when convenient to do so.

**DISCIPLINE**

**A.     Respondent's Prior Disciplinary Case**

**{20}** Before explaining the discipline that is warranted under the circumstances of this case, we begin by noting that this is the second time Respondent has come before the Court on disciplinary charges. In 2011, Respondent was charged with violating numerous Rules of Professional Conduct, including a charge that he violated Rule 16-101 by failing to timely respond to a motion for summary judgment and a charge that he violated Rule 16-303 by making a false statement in a motion to withdraw. In response to the disciplinary charges, Respondent entered into a consent agreement on August 23, 2011, in which he agreed not to contest that he had violated Rules 16-101 through -105, -107, -115, -116, -300, -302 through -304, -404, -503, and -804 NMRA.

**{21}** The vast majority of the ethical violations in Respondent's first disciplinary case arose from Respondent's mismanagement of his high volume law practice. Based on Respondent's conduct and the terms of the consent agreement, on November 28, 2011, we suspended Respondent from the practice of law for a period of six months, but we deferred the suspension for one year upon certain terms and conditions. To address Respondent's mismanagement of his private practice, we placed Respondent on supervised probation under Rule 17-206(B) for a period of one year and appointed an attorney to supervise Respondent. Under the terms of supervised probation, we required Respondent to (1) meet regularly with his supervising attorney; (2) accept instruction from his supervising attorney in the areas of law office management, caseload management, and the development of a system for prompt communication with clients and opposing counsel; (3) comply with the Rules of Professional Conduct and the Rules Governing Discipline; and (4) attend continuing legal education courses on law office practice management. Respondent's initial term of supervised probation would have expired on November 28, 2012, if the Court had not extended Respondent's probation as a consequence of the case now before us.

**B.     Respondent's Conduct Warrants Suspension.**

**{22}** We now turn to the appropriate sanction to impose in this case, guided by the *ABA Standards for Imposing Lawyer Sanctions* (2005) (*ABA Standards*). *See In re Convisser*, 2010-NMSC-037, ¶ 42, 148 N.M. 732, 242 P.3d 299. The hearing committee recommended

that the Court publicly censure Respondent under Rule 17-206(A) of the Rules Governing Discipline and assess the costs of the disciplinary proceedings against Respondent. The hearing committee considered Disciplinary Counsel's recommendation of an indefinite suspension for a minimum of six months, but ultimately concluded that a public censure was sufficient to communicate to Respondent the seriousness of his conduct. In recommending a public censure, the hearing committee found three aggravating factors: (1) Respondent's prior disciplinary case, discussed above; (2) the fact that this case involves multiple offenses; and (3) Respondent's "substantial experience in practicing law." *See ABA Standards* § 9.22(a), (d) & (i) (listing aggravating circumstances that may justify an increase in the discipline imposed). The only mitigating factor the hearing committee found was Respondent's cooperation during the disciplinary proceedings. *See id.* § 9.32(e). Furthermore, the hearing committee expressly rejected Respondent's contention that he lacked any selfish or dishonest motive with respect to his conduct. *See id.* § 9.22(b). A hearing panel of the Disciplinary Board approved the hearing committee's findings and conclusions, but the hearing panel recommended to this Court the more severe disciplinary sanction of suspension from the practice of law for twelve months, with all but three months deferred.

**{23}** We agree with the hearing panel that a public censure alone is an insufficient sanction under the circumstances of this case, particularly in light of Respondent's demonstrated pattern of dishonesty. "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court[,] . . . takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." *ABA Standards* § 6.12. Suspension also is appropriate when a lawyer causes potential injury to a client by "engag[ing] in a pattern of neglect," *id.* § 4.42(b), "knowingly fail[ing] to perform services," *id.* § 4.42(a), or "engag[ing] in an area of practice in which the lawyer knows he or she is not competent," *id.* § 4.52.

**{24}** In this case, Respondent's array of professional misconduct, including the submission of false statements to the court, adversely affected both the legal proceedings and his clients' interests. Respondent's clients in the legal malpractice suit ultimately lost their case on summary judgment because Respondent failed to retain and disclose an expert witness by the court-ordered witness disclosure deadline. And in the criminal case, Respondent should not have accepted the defendant as a client unless Respondent intended to zealously defend the defendant through the conclusion of the case, regardless of whether the defendant chose to accept a plea offer.

**{25}** Accordingly, in our order entered September 19, 2012, we suspended Respondent from the practice of law for one year, deferred nine months of the suspension, and ordered that Respondent shall continue on supervised probation for one additional year from November 28, 2012, under the same terms and conditions set forth in this Court's November 28, 2011, order. We also ordered that Respondent pay the costs of his disciplinary proceedings and receive this public censure.

7

**CONCLUSION**

{26}    This Court's primary concern in cases involving attorney discipline is to ensure that the Court fulfills its responsibility to protect the public by ensuring that attorneys licensed to practice law before New Mexico courts comply with our standards of professional conduct.  *In re Stewart*, 104 N.M. 337, 340, 721 P.2d 405, 408 (1986).  Attorneys are officers of the court, and our system of justice works only if the courts can rely on attorneys to fulfill their duty of candor to the tribunal.  *See Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 339, 695 P.2d 483, 489 (1985).  Respondent must fulfill his obligation to exhibit the personal honesty and integrity expected of lawyers and to refrain from dishonesty and other conduct prejudicial to the administration of justice.  This public censure shall be published in the *New Mexico Bar Bulletin* and the *New Mexico Appellate Reports* in accordance with Rule 17-206(D).

**{27}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *In the Matter of Chavez*, No. 33,280**

**ATTORNEYS**
Disciplinary Action
Effective Assistance of Counsel
Legal Malpractice
Professional Responsibility

**CIVIL PROCEDURE**
Expert Witnesses
Summary Judgment

**CRIMINAL PROCEDURE**
Plea and Plea Bargaining