An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

ALFONSO MANUEL BLAKE,
Appellant,
vs.
E.K. MCDANIEL, WARDEN OF ELY
STATE PRISON; AND THE STATE OF
NEVADA,
Respondents.

No. 59263

**FILED**

JUL 30 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from the district court's order denying a post-conviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

Appellant Alfonso Manuel Blake met Sophear Choy through her employment as a dancer at a club in Las Vegas. Sophear and her older sister Kim danced at various clubs in Las Vegas to earn money for school. One evening the sisters and their friend Priscilla Van Dine met Blake at a bar. He offered to rent three rooms in his house to Kim. Kim told Blake that she would consider his offer. They agreed that while she considered Blake's offer, the women would store some of their belongings in Blake's garage. About two days later, Kim, Sophear, and Van Dine dropped off their belongings at Blake's house. Feeling uncomfortable with the arrangement with Blake, the women decided not to move into his house. Kim called Blake, informed him of their decision, thanked him for allowing them to store their belongings in his garage, and arranged to

SUPREME COURT
OF
NEVADA

(O) 1947A

14-24925

retrieve their belongings around 11 p.m. the next night. Blake was upset with their decision.

On March 4, 2003, Kim, Van Dine, and two of their friends drove to Blake's house in two vehicles to retrieve the women's belongings. They were unable to fit everything in the vehicle, and Kim told Blake that they would return later that evening for the rest of their things. The encounter was uneventful.

The situation turned confrontational when Kim, Van Dine, and Sophear returned later that evening to gather the rest of their belongings. While driving to Blake's house, Sophear had a heated phone conversation with Blake. When the women reached Blake's neighborhood, they noticed some of their possessions on a street corner and stopped. While they were loading their vehicle, two cars pulled up behind them. Blake rushed out of one of the vehicles and confronted Sophear. He nudged her in the back and the three women who were with Blake (Jinah Chung, Bonette Lim, and Aileen Ramos) surrounded Sophear. Nervous that Sophear was about to be beaten, Kim called 9-1-1 on her cellphone. Blake began choking Sophear and hitting her head against boxes that had been loaded into her vehicle. During the altercation, Blake stabbed Sophear, and he somehow was stabbed. One of his companions tried to hit Kim and take her cellphone. After Sophear dropped to the ground, Blake approached Kim, took her cellphone and demanded to know whom she had called.

After the altercation, Blake ordered Kim, Sophear, and Van Dine to walk toward an open desert area. He told his three female companions to leave the area. After walking some distance, he forced the women on their knees, donned a pair of gloves, pulled a silver revolver out

of his pocket, and said, "I warned you I didn't want any problems." Blake shot Van Dine and Sophear in the head. He pointed the gun at Kim and pulled the trigger. The bullet struck Kim in the head and ricocheted off a ring on her right hand, which she had waved over her head. Blake shot Kim again in the head, and she lost consciousness.

When Kim woke up, Blake was gone. Kim stumbled across the desert area yelling for help. She came to a police car and told the officer that Blake had shot her, her sister, and a friend. One of the officers ran to the area from which Kim emerged and found Sophear dead. Van Dine, however, was still breathing. She was transported to the hospital, where she succumbed to her injuries a few hours later.

Meanwhile, Blake fled to Los Angeles along with Chung, Lim, and his friend, Vandal, in Chung's Blazer. During the drive, Blake and Vandal concocted Blake's alibi. When they arrived in Los Angeles, Vandal wrapped Blake's gun in a towel and threw it in the sewer. They also stopped to buy hand cleaner. Blake scrubbed his hands with it and tossed the remainder down the sewer.

While in Los Angeles, Blake sought medical treatment for his injuries at a local hospital but lied to medical personnel about how he incurred his injury. During a phone call Blake received at the hospital, Chung heard him say, "How could this be, there's no possible way. I shot them in the head." Blake left the hospital the day after being admitted. He, Lim, and Chung drove to the San Bernardino, California area and then headed back to Las Vegas. On March 8, 2003, police officers in Barstow, California, who were on the lookout for Chung's Blazer, pulled the vehicle over with weapons drawn. Blake, Lim, and Chung were arrested without incident.

Blake asserted an insanity defense at trial. To support that defense, he relied on testimony from his sister, Arlene Oliver, and a psychologist, Dr. Louis Mortillaro. Oliver testified that when Blake arrived at her home around 3 a.m. on the morning after the shootings, he appeared irrational and delusional. He asked for a ride and then hid in Oliver's car, seeming afraid that someone was after him. Dr. Mortillaro testified to his opinion regarding Blake's mental state based on a series of tests and several hours of interviews with Blake, his brother and sister, and Ramos. Dr. Mortillaro opined that Blake was in a compromised mental state at the time of the shootings, meaning that "he would have difficulty determining right from wrong and thinking logically." He also opined that Blake suffered from posttraumatic stress disorder (PTSD) resulting from the stab wound he received during the altercation with Sophear. During cross-examination, Dr. Mortillaro testified that he was unaware of several violent outbursts by Blake and agreed that he "absolutely" would have preferred to have had that information prior to his diagnosis.

The State rebutted Blake's insanity defense with testimony from psychiatrist Dr. Thomas Bittker who disagreed with both diagnoses offered by the defense expert. First, Dr. Bittker disagreed that Blake suffered a brief reactive psychosis and stated that Dr. Mortillaro's opinion did not correspond to any professional standard or to Dr. Bittker's clinical experience. Second, Dr. Bittker testified that Blake's PTSD resulted from the shootings, not from being stabbed. Dr. Bittker concluded that, based upon a reasonable degree of medical certainty, Blake understood the nature of his actions when he shot the victims.

The jury found Blake guilty of the first-degree murders of Sophear and Van Dine and the attempted murder of Kim, all with the use of a deadly weapon. At the penalty hearing, the State presented evidence concerning Blake's criminal history, including: (1) a conviction for misdemeanor battery with substantial bodily harm for hitting a 17-year-old boy with a baseball bat, resulting in stitches to the boy's head, a broken nose, and bruises; (2) a misdemeanor disorderly-conduct conviction for stabbing a 17-year-old boy; (3) an arrest for hitting his girlfriend and pushing her to the ground; (4) an encounter with a motorist in which Blake threw a cup of ice at the motorist and punched her twice in the face; (5) a misdemeanor malicious-destruction-of-personal-property conviction for rendering his girlfriend's car inoperable; (6) a misdemeanor conviction for brandishing a weapon for producing two butcher knives and threatening to kill a woman's son; (7) a misdemeanor conviction for conspiracy to possess a controlled substance resulting from police officers' discovery of 164 grams of marijuana and $1000 on Blake's person; (8) a felony conviction for the possession of a forged passport; and (9) two misdemeanor counts of soliciting prostitution. Chung testified to beatings she sustained from Blake and his controlling behavior. The State also presented victim impact testimony from the victims' family members.

The jury found three circumstances aggravated each murder—Blake had been convicted of a felony involving the use or threat of violence to the person of another (the attempted murder of Kim), the murder was committed to avoid or prevent a lawful arrest, and Blake had been convicted of more than one murder in the immediate proceeding. One or more jurors also found three mitigating circumstances—Blake's remorse; his mental, emotional, or physical state at the time of the incident; and the

lack of any evidence of a long-standing plan to commit murder. In weighing the aggravating and mitigating circumstances, the jury determined that any mitigating circumstances were insufficient to outweigh the aggravating circumstances and returned a sentence of death for each murder. This court affirmed the judgment of conviction and death sentences. *Blake v. State*, 121 Nev. 779, 121 P.3d 567 (2005).

Blake filed a timely proper person post-conviction petition for a writ of habeas corpus and later filed a supplemental petition through appointed counsel. The district court denied the petition without conducting an evidentiary hearing. On February 18, 2009, this court upheld the district court's judgment and remittitur issued on May 19, 2009. *Blake v. State*, Docket No. 50552 (Order of Affirmance, February 18, 2009). On April 22, 2010, Blake filed a second post-conviction petition. The State filed a motion to dismiss the petition on the grounds that Blake's claims were procedurally barred and several claims were barred by the law-of-the-case doctrine. The district court dismissed the petition without conducting an evidentiary hearing, concluding that Blake's claims were procedurally barred or barred by the law-of-the-case doctrine. This appeal followed.

Because Blake filed his petition approximately five years after this court resolved his direct appeal, the petition was untimely under NRS 34.726(1). The petition was also successive and therefore procedurally barred pursuant to NRS 34.810(1)(b)(2). He argues that the district court erred by denying his petition as procedurally barred because post-conviction counsel's ineffectiveness established good cause and prejudice to overcome the procedural bars. He further argues that he was entitled to an evidentiary hearing.

Blake's first post-conviction counsel was appointed pursuant to a statutory mandate. NRS 34.820(1). He therefore was entitled to effective assistance of that counsel. *Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997); *McKague v. Warden*, 112 Nev. 159, 164-65 & n.5 912 P.2d 255, 258 & n.5 (1996). And this court has acknowledged that in that circumstance a meritorious claim that post-conviction counsel provided ineffective assistance may establish cause under NRS 34.810 for the failure to present a particular claim in the prior post-conviction proceeding. *Crump*, 113 Nev. at 304-05, 934 P.2d at 253-54. But the ineffective-assistance claim must not be procedurally defaulted. *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). Here, the post-conviction-counsel claim is subject to the time bar set forth in NRS 34.726(1). *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 235, 112 P.3d 1070, 1077 (2005). To demonstrate good cause for the delay, a claim must be raised within a reasonable time after it becomes available. *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506. Blake's claims of ineffective assistance of post-conviction counsel were not reasonably available until his appeal from the district court's order denying his first post-conviction petition was resolved. Having filed his second post-conviction petition within approximately 11 months after this court resolved his first post-conviction appeal; we conclude that Blake raised his claims of ineffective assistance of post-conviction counsel within a reasonable time after they became available. He must, however, still show prejudice to overcome the procedural bars.

Blake argues that post-conviction counsel was ineffective for failing to investigate his case and challenge the ineffective assistance of trial and appellate counsel on a number of grounds. To show that post-

conviction counsel was ineffective for failing to raise meritorious claims of ineffective assistance of trial and appellate counsel, a petitioner must show that post-conviction counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result of counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Crump*, 113 Nev. at 304, 934 P.2d at 254 (indicating that *Strickland* standard would determine whether post-conviction counsel provided ineffective assistance where that counsel was appointed pursuant to a statutory mandate). Where, as here, the post-conviction-counsel claim is based on the omission of trial- or appellate-counsel claims, the merits of the post-conviction-counsel claim turn in large part on the merits of the omitted trial- or appellate-counsel claim. *See State v. Jim*, 747 N.W. 2d 410, 418 (Neb. 2008) (stating that layered claim of ineffective assistance requires evaluation at each level of counsel); *see also Clabourne v. Ryan*, 745 F.3d 362, 377-78 (9th Cir. 2014) (observing that prejudice showing required for ineffective assistance of post-conviction counsel based on failure to raise ineffective-assistance-of-trial-counsel claim "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective"). To establish ineffective assistance of trial counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88; *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Similarly in establishing ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below

SUPREME COURT
OF
NEVADA

(O) 1947A

8

an objective standard of reasonableness, and resulting prejudice such that the omitted issue would have had a reasonable probability of success on appeal. *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996). Both deficiency and prejudice must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). This court gives deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

For the following reasons, we conclude that Blake failed to show that post-conviction counsel was ineffective on any of the grounds he asserts and therefore his claims were procedurally barred and the district court did not err by denying his post-conviction petition without conducting an evidentiary hearing.

*Change of venue*

Blake argues that post-conviction counsel was ineffective for not challenging trial counsel's failure to seek a change of venue considering the extensive media coverage of the crimes. "[A] defendant seeking a change of venue must present evidence showing the extent of inflammatory pretrial publicity and that such publicity corrupted the trial." *Sonner v. State*, 112 Nev. 1328, 1336, 930 P.2d 707, 712 (1996). Prejudice is not presumed "based on extensive pretrial publicity" in the absence of a showing of actual bias on the part of jurors ultimately empaneled. *Rhyne v. State*, 118 Nev. 1, 11, 38 P.3d 163, 169 (2002); *see Sonner*, 112 Nev. at 1336, 930 P.2d at 713. Because Blake failed to establish any substantial grounds for trial counsel to seek a change of

SUPREME COURT
OF
NEVADA

(O) 1947A

9

venue, a claim that trial counsel was deficient in failing to seek a change of venue would have been futile. Under those circumstances, post-conviction counsel cannot be faulted for not raising the trial-counsel claim. *See Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978) (observing that counsel cannot be deemed ineffective for not engaging in a futile exercise).

*Matters related to voir dire*

Blake argues that post-conviction counsel was ineffective for not challenging trial and appellate counsel's performance on matters related to voir dire, including trial counsel's failure (1) to object to the trial court's rushing of voir dire, thereby causing counsel to refrain from asking questions to reveal juror bias; (2) to ask meaningful questions to exercise valid peremptory and for-cause challenges; (3) to ask potential jurors if they could be fair under the circumstances of Blake's case; (4) to "life qualify" the jury; (5) to rehabilitate death-scrupled jurors; and (6) to request secluded voir dire of jurors on sensitive race issues. Nothing in the trial transcripts suggests that voir dire was unfairly accomplished or that any empanelled juror was not impartial. And even accepting all of Blake's contentions as true and that trial counsel's handling of voir dire was deficient, he has not demonstrated that the voir dire process rendered his trial unfair or that any of the jurors ultimately empanelled harbored a bias against him. *Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996) ("If the impaneled jury is impartial, the defendant cannot prove prejudice."). Accordingly, he has not demonstrated that post-conviction counsel was ineffective for failing to raise these trial- and appellate-counsel claims.

*Unrecorded bench conferences*

Blake contends that post-conviction counsel was ineffective for not challenging trial counsel's and the district court's failure to ensure that all bench conferences were recorded and appellate counsel's failure to raise this matter on appeal. We have recognized that, "[o]nly rarely should a proceeding in a capital case go unrecorded." *Daniel v. State*, 119 Nev. 498, 507, 78 P.3d 890, 897 (2003). But, "a capital defendant's right to have trial proceedings recorded and transcribed is not absolute," *Archanian v. State*, 122 Nev. 1019, 1033, 145 P.3d 1008, 1018-19 (2006), and "[t]he mere failure to make a record of a portion of the proceedings . . . is not grounds for reversal." *Daniel*, 119 Nev. at 508, 78 P.3d at 897. Blake failed to show that any omitted portions of the record were so significant that meaningful appellate review was frustrated. *Id.* Accordingly, he cannot demonstrate that post-conviction counsel was ineffective for omitting these trial- and appellate-counsel claims.

*Insanity defense and other instructions related to murder*

Blake contends that post-conviction counsel was ineffective for not challenging trial counsel's misapprehension of the insanity defense, which, he argues, left him with no defense and caused trial counsel to request constitutionally deficient jury instructions. Post-conviction counsel challenged trial counsel's decision to pursue an insanity defense in Blake's first post-conviction petition on the ground that trial counsel was ineffective in pursuing an insanity defense because the evidence did not support the defense. On appeal, we concluded that trial counsel's decision to pursue an insanity defense was not unreasonable based on the facts of the case. *Blake v. State*, Docket No. 50552 (Order of Affirmance, February 18, 2009) at 5-7. Now Blake contends that trial counsel's strategy was

SUPREME COURT
OF
NEVADA

(O) 1947A

11

unreasonable because counsel misunderstood the definition of insanity and, as a result, presented evidence that fell short of establishing insanity. He further argues that trial counsel's inadequate preparation of Dr. Mortillaro caused him to testify inaccurately about the insanity defense—specifically that Blake had no history of mental illness, that he was unaware of any event prior to the shootings that would cause Blake to suffer a psychiatric break, and that Blake probably did not have any brain abnormalities—because Dr. Mortillaro had not been provided with Blake's "historical documents and social history" and had not administered any neurological tests.

Having considered the record, we conclude that Blake's new argument does not alter our prior conclusion that trial counsel were not ineffective for pursuing an insanity defense. *See Hall v. State*, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975) ("The doctrine of the law of the case cannot be avoided by a more detailed and precisely focused argument subsequently made after reflection upon the previous proceedings."). Although an insanity defense may not have been a strong defense, any defense would have been a difficult sale to the jury. *See Blake*, Docket No. 50552 (Order of Affirmance, February 18, 2009) at 6 ("The circumstances of the shooting and Blake's actions after the event show that defending this case was an extremely difficult undertaking. Any defense pursued would have been a daunting task."). Trial counsel made the best of a difficult case: counsel presented an expert in an effort to establish the defense and there is nothing in the current petition to suggest that a different understanding of the defense would have led to a stronger presentation or would have led trial counsel not to present the defense. Even if we were persuaded by Blake's arguments that trial counsel were

deficient, he cannot demonstrate prejudice considering the overwhelming evidence showing that he lined up the victims, forced them on their knees, and methodically shot each of them in the back of the head and then fled Las Vegas, constructed an alibi, and concealed evidence. We therefore conclude that he cannot demonstrate that post-conviction counsel was ineffective based on the failure to question trial counsel's understanding of the insanity defense.

In a closely related claim, Blake argues that trial counsel's misapprehension of the insanity defense resulted in several instructional errors. First, he complains that the trial court should have refused counsel's requested insanity instruction because no evidence of legal insanity was presented. That claim is appropriate for review on direct appeal, and Blake does not provide any explanation of good cause for his failure to present this claim earlier. *See* NRS 34.810(1)(b)(2). Second, Blake argues that the trial court erred by refusing counsel's instruction regarding the consequences of a verdict of not guilty by reason of insanity. On direct appeal, this court acknowledged that the district court should have provided such an instruction but concluded that no prejudice resulted because there was overwhelming evidence against a finding of insanity. *Blake v. State*, 121 Nev. 779, 792, 121 P.3d 567, 575-76 (2005). Blake has not articulated good cause for raising this claim again and therefore we will not consider it. *See* NRS 34.810(2); *Hall*, 91 Nev. at 316, 535 P.2d at 799. Third, he contends that trial counsel failed to request and the trial court failed to give a constitutionally adequate second-degree murder instruction. The instructions given were not constitutionally

deficient and comported with relevant statutes and this court's jurisprudence.[1] *See* NRS 200.010; NRS 200.020; NRS 200.030; *Leonard v. State*, 114 Nev. 1196, 1208, 969 P.2d 288, 296 (1998); *Guy v. State*, 108 Nev. 770, 776-77, 839 P.2d 578, 582-83 (1992). We conclude that Blake has not demonstrated that post-conviction counsel was ineffective for omitting these claims.

*Evidence refuting first-degree murder*

Blake argues that post-conviction counsel was ineffective for not raising a claim that trial counsel were ineffective for failing to investigate and present evidence of his brain damage and mental defects that would support a verdict of second-degree murder. To support his allegation, Blake presented evaluations from a psychologist and a psychiatrist, both of whom essentially concluded that Blake suffered from a long-term dissociative disorder resulting from "the extremely toxic environment in which he was raised," and that the escalating argument with Sophear where she stabbed him triggered further dissociation, causing him to transition "into a new state of mind in which he committed the murders and for which he has no memory." These experts opined that Blake "was in such a brain damaged and dissociated state at the time of the homicides that he was unable to deliberate and/or formulate the intent to kill the victims, as stated within a reasonable degree of neuropsychological and psychological scientific certainty." Although Dr.

---

[1]To the extent Blake raises trial error, this court need not consider his claim because he provides no good cause for not having raised that claim earlier. *See* NRS 34.810(1)(b)(2).

Mortillaro's diagnosis is not identical to the new evaluations prepared for this post-conviction proceeding and was focused on an insanity defense, the jury heard evidence that Blake suffered from a mental condition at the time of the shootings that made it unlikely that the shootings were premeditated but nevertheless convicted him of premeditated murder rather than any of the lesser offenses, including second-degree murder and voluntary manslaughter, on which they were instructed. We conclude that Blake has not demonstrated that post-conviction counsel was ineffective based on the omission of this trial-counsel claim.

*Prosecutorial misconduct*

Blake argues that post-conviction counsel was ineffective for not raising a claim that trial and appellate counsel were ineffective for failing to challenge several instances of prosecutorial misconduct. Specifically, he complains that (1) trial counsel failed to object to alleged misstatements of law made by the prosecutor during voir dire that presumed that his guilt and the aggravating circumstances were forgone conclusions, (2) trial and appellate counsel failed to challenge the prosecution's cross-examination of Dr. Mortillaro concerning his knowledge of violent acts that Blake had committed before the shootings, (3) trial counsel should have objected to the prosecutor's suggestion that the jury was aligned with the prosecution, (4) trial counsel failed to object to the prosecutor's mischaracterization of the defense, (5) trial counsel failed to object to the prosecutor's arguments concerning the mitigation evidence, (6) trial counsel should have objected to the prosecutor's argument to send a message to the community and arguments concerning general and specific deterrence, (7) trial counsel failed to object to improper victim impact testimony, and (8) appellate counsel should have

challenged the prosecutor's disparagement of trial counsel, the defense expert, and the defense theory. We have carefully considered Blake's arguments and conclude that he failed to establish that post-conviction counsel was ineffective for not challenging trial and appellate counsel's performance on these grounds because most of the comments or arguments that he has identified were proper and those that were not had no prejudicial effect at trial.

*Elements of capital eligibility*

Blake argues that post-conviction counsel was ineffective for not challenging trial counsel's failure to object to the lack of a probable cause finding on the elements of capital eligibility and to the waiver of Blake's right to a preliminary hearing. The probable-cause claim lacks merit for two reasons. First, this court rejected a similar claim in *Maestas v. State*, 128 Nev. ___, ___, 275 P.3d 74, 86-87 (2012). Second, this court determined in Blake's first post-conviction appeal that trial counsel was not ineffective in this regard. *Blake v. State*, Docket No. 50552 (Order of Affirmance, February 18, 2009) at 4. The waiver issue lacks merit because this court rejected the underlying premise of this claim on direct appeal, *see Blake*, 121 Nev. at 798-99, 121 Nev. at 579-80, and rejected a substantially similar claim in his first post-conviction petition, *Blake*, Docket No. 50552 (Order of Affirmance, February 18, 2009) at 4-5. Accordingly, we conclude that Blake has not demonstrated that post-conviction counsel was ineffective on these grounds.

*Instructions*

Blake contends that post-conviction counsel was ineffective for not raising a claim that trial and appellate counsel should have challenged several jury instructions, including (1) reasonable doubt, (2) weighing of

aggravating and mitigating circumstances, and (3) "equal and exact justice." Post-conviction counsel's omission of these trial- and appellate-counsel claims was not objectively unreasonable because the instructions were correct statements of law, *see* NRS 175.211(1); *Nunnery v. State*, 127 Nev. ___, ___, 263 P.3d 235, 250-51 (2011) (concluding that the weighing of aggravating and mitigating circumstances is not subject to the beyond-a-reasonable-doubt standard); *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998) (upholding instruction on equal and exact justice); *Bollinger v. State*, 111 Nev. 1110, 1115 & n.2, 901 P.2d 671, 674 & n.2 (1995) (holding that language in reasonable doubt instruction is not unconstitutional where the jury received additional instruction on the State's burden of proof and the presumption of innocence), and therefore the omitted trial- and appellate-counsel claims would have had no merit.

Blake also argues that post-conviction counsel was ineffective for not raising a claim that trial and appellate counsel should have challenged the instruction regarding the consideration of bad acts in the death calculus. He argues that the instruction failed to explain the limited use of character evidence and specifically neglected to advise the jury that character evidence offered in aggravation could not be considered in determining death eligibility. Post-conviction counsel's omission of this claim was not objectively unreasonable as the record belies the claim—it shows that the jury was correctly instructed.

*Preventing-a-lawful-arrest aggravating circumstance*

Blake contends that post-conviction counsel was ineffective for not raising a claim that trial and appellate counsel failed to challenge the preventing-a-lawful-arrest aggravating circumstance. Specifically, he argues that the aggravating circumstance is unconstitutional because its

scope is unlimited and should only encompass circumstances where an arrest is "underway or imminent." He further contends that the fact that a victim witnessed a felony preceding her murder is insufficient; rather, the aggravating circumstance should require evidence of a specific intent to kill to avoid detection. On direct appeal, we rejected a similarly restrictive definition of the aggravating circumstance proffered by Blake and concluded that strong evidence supported the aggravating circumstance. *See Blake*, 121 Nev. at 793-95, 121 P.3d at 576-77; *see Blake v. State*, Docket No. 50552 (Order of Affirmance, February 18, 2009) at 9 (reiterating that strong evidence supported the aggravating circumstance). We conclude that Blake has failed to demonstrate that post-conviction counsel was ineffective for failing to challenge trial and appellate counsel's representation where the underlying basis of the ineffective-assistance claim was rejected on direct appeal.

*Mitigation evidence*

Blake argues that post-conviction counsel was ineffective for not adequately challenging trial counsel's failure to investigate and present evidence of his mental disorders and depraved childhood, which would have militated against a death sentence. He acknowledges that first post-conviction counsel challenged trial counsel's representation but contends that post-conviction counsel presented only bare allegations, as noted by this court, *see Blake*, Docket No. 50552 (Order of Affirmance, February 18, 2013), at 2-4, and conducted no investigation to prove that trial counsel's deficient representation resulted in prejudice.

Blake produced a plethora of evidence he contends post-conviction counsel should have investigated and presented to show that trial counsel's deficient representation resulted in prejudice. That

Supreme Court
of
Nevada

(O) 1947A

18

evidence includes numerous declarations from friends and family describing Blake's dysfunctional and abusive childhood. He also provided mental health evaluations outlining his brain damage and mental disorders and an Africana Studies report that described the geographic culture and environment to which several generations of Blake's family were exposed. Blake also presented evidence suggesting that he would not pose a future danger if incarcerated, considering his age (34 at the time of sentencing), continuing contact with friends and family, history of employment, past correctional behavior, and his level of education (high school graduate).

Assessing deficient performance is an objective inquiry—a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 787 (2011). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Supreme Court
OF
Nevada

(O) 1947A

Although deficient performance is reviewed under an objective rather than subjective standard, Blake submitted declarations by trial and post-conviction counsel in which counsel suggest that they did little investigation to uncover additional mitigation evidence. But even accepting Blake's contention that trial and post-conviction counsel were deficient in their representation, he must establish prejudice. Proving prejudice from any counsel deficiency was challenging on this record, which shows that Blake committed a calculated, execution-style shooting of three women and attempted to conceal his crimes. As this court has previously recognized, "[t]he circumstances of the shooting and Blake's actions after the event show that defending this case was an extremely difficult undertaking." *Blake,* Docket No. 50552 (Order of Affirmance, February 18, 2009), at 6. While the new mitigation evidence appears credible and the question of whether trial and post-conviction counsel's representation was deficient may be a close call, we are not convinced that Blake has demonstrated that had the additional mitigation evidence been presented to the jury, there is a reasonable probability that the outcome of the proceeding would have been different. We therefore conclude that Blake has not demonstrated that post-conviction counsel was ineffective on these grounds.[2]

---

[2]The Ninth Circuit Court of Appeals recently reversed a federal district court decision denying Blake's motion to stay and abey a mixed 28 U.S.C. § 2254 habeas corpus petition pending exhaustion of his claims in state court. *Blake v. Baker,* 745 F.3d 977 (9th Cir. 2014). In his federal habeas petition, Blake argued that trial counsel was ineffective for failing to discover and present to the jury evidence of his abusive childhood and history of mental illness. *Id.* at 979. Because the claim was not been

*continued on next page . . .*

*Lethal injection protocol*

Blake contends that post-conviction counsel was ineffective for not requesting this court revisit the denial of his claim that the lethal injection protocol is unconstitutional. In *McConnell v. State*, 125 Nev. 243, 246-49, 212 P.3d 307, 310-11 (2009), we held that challenges to the lethal

---

*. . . continued*

exhausted, Blake moved for a stay and abeyance of his federal petition so that he could return to state court to exhaust his claim. *Id.* Blake argued that he had good cause for failing to exhaust his ineffective-assistance claim because his state post-conviction counsel was ineffective for not conducting any independent investigation and discover obvious evidence that Blake suffered sexual, physical, and emotional abuse and organic brain damage and psychological disorders. *Id.* The federal district court disagreed and concluded that Blake had failed to demonstrate good cause. *Id.* Blake appealed to the Ninth Circuit Court of Appeals. *Id.* The court concluded that Blake supported his good-cause claim with evidence of his abusive childhood and history of mental illness, including psychological evaluations, declarations of family and friends describing Blake's childhood and family history, and a declaration from a defense investigator stating that he was told to cease working on the case before reviewing all of the discovery materials or interviewing a witness. *Id.* at 982-83. Noting that state post-conviction counsel had not contacted any of the witnesses and none of the evidence had been presented to the state courts, the Ninth Circuit concluded that Blake had made a sufficient showing that his state post-conviction counsel's performance was deficient under *Strickland* to show good cause for his failure to exhaust the trial-counsel claim. *Id.* at 983. The Ninth Circuit's conclusions do not influence our decision for two reasons. First, we are not bound by that court's decisions. *See Nika v. State*, 124 Nev. 1272, 1285, 198 P.3d 839, 848 (2008). Second, Blake's claim was raised in the context of establishing good cause in federal court to secure a stay and abeyance for exhaustion purposes and the Ninth Circuit did not address the prejudice prong of *Strickland*.

injection protocol are not appropriately raised in a post-conviction petition. We are not persuaded by Blake's arguments to abandon our holding in *McConnell*. Because this claim would not have afforded Blake any post-conviction relief, we are not convinced that post-conviction counsel's omission of it was objectively unreasonable or prejudiced Blake in the prior post-conviction proceeding.

*Appellate review*

Blake argues that post-conviction counsel was ineffective for not challenging the constitutionality of this court's review of death sentences under NRS 177.055(2) on the ground that this court has not articulated standards for that review. He contends that the absence of standards renders this court's review unconstitutional under federal due process standards. Blake further argues that "the constitutional inadequacy of this Court's review is compounded by the fact that Nevada Supreme Court Justices are popularly elected" and therefore risk removal if they render an unpopular or controversial decision. We are not convinced that post-conviction counsel's omission of this claim was objectively unreasonable for three reasons. First, the statutory requirements are clear and need no further explanation to ensure adequate appellate review of a death sentence. *See McConnell*, 125 Nev. at 255-56, 212 P.3d at 315-16. Second, he has not suggested that any particular Justice is biased against him or identified any instances of a Justice losing an election over a vote in a death penalty case, and this court has rejected similar general allegations of partiality, *see, e.g., McConnell*, 125 Nev. at 256, 212 P.3d at 316; *State v. Haberstroh*, 119 Nev. 173, 186, 69 P.3d 676, 685 (2003). Third, the claim would have been

procedurally barred under NRS 34.810(1)(b) because it could have been raised on appeal.

*Cumulative error*

Blake argues that the cumulative effect of the deficiencies in post-conviction counsel's representation warrants relief. Assuming that deficiencies in counsel's performance may be aggregated to determine prejudice under *Strickland, see Harris By and Through Ramseyer v. Wood,* 64 F.3d 1432, 1438 (9th Cir. 1995); *State v. Thiel,* 665 N.W.2d 305, 322 (Wis. 2003), we conclude that any deficiencies in post-conviction counsel's representation are insufficient to establish prejudice even when considered cumulatively.[3]

---

[3]As part of the cumulative error analysis, Blake invites us to consider the errors that this court found on direct appeal and to revisit claims previously rejected by this court. There are no grounds to re-raise previously rejected claims where no error was found because prejudice cannot be cumulated in that circumstance, *see In Re Reno,* 283 P.3d 1181, 1224 (Cal. 2012) ("[C]laims previously rejected on their substantive merits—i.e., this court found no legal error—cannot logically be used to support a cumulative error claim because we have already found there was no error to cumulate."), *id.* at 1250 (rejecting petitioner's attempt to re-raise previously rejected claims), and he has not adequately explained how any previous claim where error was found but rejected as non-prejudicial assists us in assessing cumulative prejudice in this proceeding.

Having considered Blake's arguments and concluded that no relief is warranted, we

ORDER the judgment of the district court AFFIRMED.[4]

_____, C.J.
Gibbons

_____, J.          _____, J.
Pickering                                            Hardesty

_____, J.          _____, J.
Parraguirre                                       Douglas

---

[4]Blake argues that the district court erred by denying a vast number of claims as barred by the law-of-the-case doctrine because it prevented the district court from considering his new evidence. The district court concluded that most of Blake's claims were barred by the law of the case, but it appears that the district court also denied Blake's petition because he failed to demonstrate that post-conviction counsel was ineffective. To the extent that Blake's claims were merely a more detailed argument than that presented in his first post-conviction petition, the district court correctly relied on the law-of-the-case doctrine. Any error in dismissing a claim as barred by the law-of-the-case doctrine did not prejudice Blake because the district court nevertheless rightly denied the post-conviction petition. See Wyatt v. State, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (observing that this court will affirm the judgment of district court if it reached the right result for the wrong reason).

cc:    Hon. Stefany Miley, District Judge
Federal Public Defender/Las Vegas
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

CHERRY, J., with whom SAITTA, J., agrees, dissenting:

I respectfully dissent from the court's decision as to Blake's claim that post-conviction counsel provided ineffective assistance with respect to the claim that trial counsel's investigation and presentation of mitigation evidence was ineffective.

Blake presented substantial and compelling new mitigation evidence showing that his childhood was disturbingly dysfunctional and abusive. The core elements of that evidence show that the children in Blake's family were subjected to significant sexual, physical, and emotional abuse, abandonment, and neglect, with the abuse primarily perpetrated by family members. Some of Blake's siblings had sexual relations with each other at a young age. Two of Blake's uncles sexually abused him at the age of five or six, after which he began to have tantrums and experience rage. Blake's mother, aunts, and grandmother worked as prostitutes. Stabbings in Blake's family occurred with some frequency; his family members were sometimes the perpetrators and other times the victims. His family history is rife with instances of mental illness, including bi-polar disorder. Blake's mother abused alcohol and drugs while pregnant with him and was extremely physically abusive to him and his siblings, beating them with extension cords, ropes, wire hangers, wet belts, and tree branches while they were naked. He witnessed his mother beat his father with an iron skillet and shoot him in the leg. He has apparently been plagued by brain damage resulting from head trauma after various accidents. Blake experienced difficulties in school, was a poor student, and got into fights, which led to suspensions and arrests. In his later teenage years, he abused alcohol and smoked marijuana and, shortly after high school, he was shot in the leg by an

unknown assailant. In adulthood, he became increasingly paranoid and distanced himself from family and friends.

Evaluations from mental health experts explained his brain damage and mental health impairments. One evaluation concluded that Blake suffered from a variety of neuropsychiatric and psychiatric conditions at the time of the shootings, including longstanding posttraumatic stress. The evaluation further concluded that his "extreme mental and emotional disturbances at the time of the homicides was an outgrowth of the extremely toxic environment in which he was raised" and that the "actions of the victims triggered 'hot buttons' that caused him to go into a dissociative state related to his history of past trauma and abuse." Another evaluation reached essentially the same conclusions—that Blake suffered from longstanding posttraumatic stress and dissociative order, along with other mental disorders.

I conclude that this evidence coupled with trial and first post-conviction counsel's admission that their representation was deficient with respect to investigating and presenting mitigation evidence is more than sufficient to warrant an evidentiary hearing. *See Nika v. State*, 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008) (observing that a petitioner is entitled to an evidentiary hearing on his claims of good cause, he is correct only if he "assert[ed] specific factual allegations that [were] not belied or repelled by the record and that, if true, would entitle him to relief"). Further, as the majority observes, the Ninth Circuit Court of Appeals recently reversed a federal district court decision denying Blake's motion to stay and abey a federal habeas corpus petition pending exhaustion of his claims in state court, concluding that he had made a sufficient showing that his state post-conviction counsel's performance was deficient under

Supreme Court
OF
Nevada

(O) 1947A

2

*Strickland* to establish good cause for his failure to exhaust the trial-counsel claim. While we are not bound by the Ninth Circuit's decision, I agree with its conclusion. The new mitigation evidence is nothing less than compelling. And although the Ninth Circuit did not address the prejudice prong of *Strickland*, I believe that there is a strong likelihood that prejudice could be established at an evidentiary hearing. Therefore, I would remand this matter to the district court for an evidentiary hearing on the issue of whether Blake can establish prejudice to overcome the procedural default rules based on his claim that post-conviction counsel was ineffective for not adequately investigating and presenting the claim that trial counsel failed to investigate and present mitigation evidence.

_____, J.
Cherry

I concur:

_____, J.
Saitta